UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

KEITH W. WOOD,

                    Plaintiff,

          v.                                    10-cv-00477
                                                (WGY)

CAROLYN W. COLVIN,
Acting Commissioner, Social
Security Administration,

                    Defendant.


_____


WILLIAM G. YOUNG, United States District Judge[1]

### DECISION AND ORDER

I.   **INTRODUCTION**

     Keith Wood ("Wood") brings this action pursuant to section

205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying him

Social Security Disability Insurance ("SSDI") benefits.[2]  Wood

_____

     [1] Of the District of Massachusetts, sitting by designation.
Reassignment Order, ECF No. 19.

     [2] The named defendant in this suit was originally Michael J.
Astrue, who was the Commissioner of Social Security at the time
the suit was filed.  On February 14, 2013, Carolyn W. Colvin was
named Acting Social Security Commissioner and has therefore been
substituted as the named defendant in this suit pursuant to
Federal Rule of Civil Procedure 25(d).  Elec. Clerk's Notes, Mar.
4, 2013.

challenges the determination of an Administrative Law Judge (the "hearing officer") that Wood is not disabled under sections 216(i) and 223(d) of the Social Security Act. Wood requests that the Court reverse the Commissioner's decision and order a calculation of benefits in accordance with the requirements of the Social Security Act, or, alternatively, vacate the decision of the hearing officer and remand the matter for further proceedings. Compl. 6, ECF No. 1; Pl.'s Br. 18, ECF No. 13. The Commissioner requests that the Court grant her motion for judgment on the pleadings and affirm her decision that Wood is not entitled to disability insurance benefits.[3] Def.'s Br. Pursuant Gen. Order No. 18 ("Def.'s Br.") 17, ECF No. 16.

### A. Procedural Posture

Wood applied for SSDI benefits on February 8, 2007, Admin. R. at 14,[4] with a protective filing date of the same day,[5] id. at 120; see also Pl.'s Br. 4. On May 29, 2007, the Regional

---

[3] The Commissioner did not file with the Court a separate motion for judgment on the pleadings. For the purposes of this decision and order, however, the Court will regard the Commissioner's brief as having incorporated the referenced motion.

[4] The Administrative Record appears in ECF documents 8-1 through 8-7. The page numbers refer to the Administrative Record as a whole.

[5] Although it appears Wood's application for SSDI benefits was actually completed and received on February 20, 2007, Admin. R. at 103-05, the parties are not in dispute over the date of filing and whether Wood's application was received within his date of last insured. Compare Pl.'s Br. 4, with Def.'s Br. 3.

Commissioner denied Wood's claim. Admin. R. at 52-55. Wood timely filed a request on June 14, 2007 for a hearing before an Administrative Law Judge to challenge the Regional Commissioner's denial. Id. at 57. A hearing was held on April 8, 2009, at which Wood appeared accompanied by legal aid counsel. Id. at 14, 286-312. A vocational expert, Julie Andrews ("Andrews"), was scheduled to appear at the hearing telephonically, however she was unable to do so. Id. at 311. A supplemental hearing was therefore held on June 5, 2009, at which Andrews appeared telephonically. Id. at 14, 27-50. On July 6, 2009, the hearing officer issued a decision finding Wood not disabled and upholding the denial of benefits. Id. at 14-22. Wood timely filed a request on July 14, 2009 for the Social Security Appeals Council to review the hearing officer's decision. Id. at 9-10. On March 5, 2010, the Appeals Council denied Wood's request for review. Id. at 1-3.

On April 23, 2010, Wood filed the present action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Compl. 1-2. The Commissioner filed an answer on August 9, 2010, Def.'s Answer, ECF No. 7, and both sides subsequently filed briefs with the Court, Pl.'s Br; Def.'s Br. On February 3, 2012, the case was reassigned to this Court. Reassignment Order.

**B.  Facts of Record**

Wood was born in 1960 and was forty-six years old when he

applied for SSDI benefits. Admin. R. at 103. After dropping out of school after complesixth grade, Wood began working a variety of jobs involving manual labor outdoors. Id. at 292-310. Wood never received any further education or formal job training. Id. at 292. In the summer of 2005, Wood's physical ailments began interfering with his ability to perform his duties as a cemetery custodian and snow-plow operator for the Town of Horicon, New York. Id. at 124, 210. On October 25, 2006, after approximately eighteen years of employment with Horicon, Wood resigned due to severe pain in his feet and legs. Id. at 292-93, 303.

### 1. Physical Impairments

#### a. Diabetes Mellitus with Sensory Neuropathy

The primary physical ailment for which Wood has sought medical treatment is sensory neuropathy in his feet, resulting from type 2 diabetes, which has caused pain in his feet and legs. In the month following Wood's resignation from his job with Horicon, Wood went to the Chester-Horicon Health Center three times seeking treatment from the Hudson Headwaters Health Network ("HHHN") for the pain in his feet. See id. at 178-79, 181. Wood complained that his feet were "[e]ven painful when he [was] off them," and that the pain was worse "when walking on concrete floors." Id. at 179. HHHN medical records indicate that Wood was diagnosed as being morbidly obese and as having diabetes mellitus, which caused Wood to develop sensory neuropathy in his

feet and legs.  Id. at 176-81, 242-58.

Over the next three years, Wood consistently complained of
the pain in his feet and legs to his primary care physician at
HHHN, John Rugge, M.D., ("Dr. Rugge").  See id. at 237, 241-58
(HHHN Primary Care Progress Notes documenting Wood's appointments
from September 2007 to February 2009).  A May 7, 2008 diabetic
foot exam at HHHN revealed that Wood could only feel one of ten
points tested on each of his feet, and that he only had feeling
on the dorsum of his feet.  Id. at 253.  During the exam, Wood
reported numbness in all of the toes on his left foot and in the
hallux of his right foot.  Id.  Wood described "sharp anterior
pain through [his] lower [left] leg up to [his] knee" and similar
pain in his right leg.  Id.  Dr. Rugge noted that both of Wood's
feet had "deformed shape" and that the pain was due, in part, to
"mechanics," including "weight burden" and "footshape."  Id.  It
appears that Wood initially was prescribed Amitriptyline for the
pain in his feet, and HHHN staff noted in November 2007 that Wood
was taking "prescribed meds for pain in feet."[6]  Id. at 128, 175,
256.  HHHN records indicate that by 2008, however, Wood was no

---

[6] The record is not entirely clear what medication Wood
received for his feet.  Wood reported to consulting physician
Kenneth D. Stein, M.D., that he had been given Elavil to try to
alleviate some of the discomfort in his feet at night, but there
is no indication in HHHN records of Wood receiving this
medication.  Id. at 210.

longer taking any prescribed medication for the pain in his feet.[7]
Id. at 250, 252, 255.  Throughout the entire period in question,
Wood took Tylenol for the pain but it provided him with little to
no relief.  See id. at 242-43, 249, 254, 257, 282.  HHHN
Physician's Assistant Bill Orlott prescribed Wood a cane to
assist Wood with walking.  Id. at 297.

To treat Wood's diabetes, Dr. Rugge prescribed Wood
Glipizide and Metformin, as well as Lantus, a daily injection of
insulin.  Id. at 128, 296.  Nonetheless, from 2007 to 2009, HHHN
staff noted that Wood's diabetes was not well controlled.  Id. at
250, 274.  Wood admitted to HHHN staff that he had failed to
exercise or abide by the diabetic diet Dr. Rugge had recommended.
Id. at 175, 246, 253, 255.

On April 24, 2007, Dr. Rugge conducted a physical
examination of Wood in which he recorded Wood as 6'3", 400 pounds
and listed Wood's treating diagnoses as diabetes with sensory
neuropathy, morbid obesity, and "broken down feet."  Id. at 188.
Dr. Rugge noted that Wood had been unable to work due to those
ailments since October 2006 and stated that Wood's prognosis for
recovery was "poor."  Id. at 189.  Dr. Rugge noted that Wood was
"mostly sedentary" during the day, averaging about an hour and a
half on his feet per day, and that Wood's ability to function in

---

[7] Wood apparently reported that the pain medication made him
feel drowsy and sluggish.  See id. at 128, 175.

a work setting was "OK [except] for his leg [and] foot pain."[8]
Id. at 194.  After assessing Wood's ability to perform work-
related physical activities, Dr. Rugge stated that Wood could
occasionally lift fifteen pounds, sit without limitation, and
push or pull, including hand and foot controls, without
limitation, but that Wood's ability to stand or walk was limited
to less than two hours per day.  Id. at 195.

On April 27, 2007, Kenneth D. Stein, M.D., ("Dr. Stein")
conducted a consultative physical examination of Wood.  Id. at
210-12.  Wood made the same complaints to Dr. Stein regarding the
pain in his feet, telling Dr. Stein that being on his feet felt
like "walking barefoot on gravel."  Id. at 210.  Wood reported
having pain in his feet even when sitting, but "described more of
an achy burning pain" in those instances.  Id.  Dr. Stein noted
that Wood's weight was greater than 350 pounds and characterized
Wood's posture as "normal," and his gait as "slow."  Id. at 211.
During the neurological portion of the exam, Dr. Stein found that
Wood "had decreased sensation on the plantar surface of the left
foot including vibratory sense," but that the "[r]est of
sensation [was] bilaterally symmetrical to light touch."  Id.
Dr. Stein concluded that Wood had "developed bilateral foot
neuropathy causing moderate-to-severe foot pain especially when

---

[8] Dr. Rugge used an "x" with a dash over it, a medical
abbreviation, to indicate "except,".  Id. at 194.

he is on his feet for more than an hour and a half." Id.

On May 24, 2007, a Social Security Administration disability examiner examined Wood and reviewed the medical evidence of Wood's alleged disability. Id. at 231-36. The examiner concluded that Wood's claim that he could walk and stand only for an hour before needing to rest was "consistent with the assessment," and that Wood's claim of having difficulty climbing stairs was also supported by medical evidence. Id. at 234-35. The disability examiner, however, rejected Dr. Rugge's conclusion that Wood's ability to stand and walk was limited to less than two hours per day. Id. at 232, 235. Instead, the disability examiner concluded that Wood could stand or walk with normal breaks for a total of at least two hours during an eight-hour workday, reasoning that Wood had "an effective gait as well as full motor strength." Id. at 232, 235.

### b. Other Impairments

Wood suffered from a variety of other ailments, albeit with less persistent and debilitating symptoms than the sensory neuropathy. Dr. Rugge diagnosed Wood with hypertension, hyperlipidemia, and hypercholestermia, id. at 178-79, 198, 210-11, 237, 241-43, 246, 248, 253, 255, 257-58, 272, and prescribed Lisinopril, Lovastatin, and Hydrochlorothiazide for those conditions. Id. at 128, 210, 296. Wood has a history of gastroesophageal reflux and Barrett's esophagitis, id. at 268-71,

8

and was prescribed Prevacid and Omeprazole to control his acid reflux. Id. at 128, 210, 296. On April 3, 2009, Wood was diagnosed by HHHN staff with "lateral epicondylitis" in his left elbow and received a cortisone injection for the pain. Id. at 279-80.

In late November 2008, Wood was injured in an All-Terrain Vehicle ("ATV") accident. Id. at 266-67. A CT scan of Wood's chest, abdomen, and pelvis revealed bruising of Wood's right lateral chest wall, but there was no evidence of a fracture or any other internal injury or pathology. Id. at 266-67. Since then, Wood has intermittently experienced pain in his chest and ribs. Id. at 245-46, 272.

### 2. Mental Impairments

In 2007, Dr. Rugge diagnosed Wood with depression. See id. at 175-77, 179, 198. Wood has taken Citalopram and Cymbalta for his depression, id. at 128, 175-77, 210, but has never sought psychiatric counseling. Id. at 208. During Dr. Rugge's examination of Wood on April 24, 2007, Dr. Rugge wrote "not applicable" in the portions of the exam requesting information on Wood's mental status and intellectual functions. Id. at 193-94. Dr. Rugge also indicated that Wood was not suicidal and that he believed Wood was capable of handling any benefits awarded to him. Id. at 195. Dr. Rugge stated that Wood had no limitations with respect to his memory, capacity for understanding and

concentration, or his ability to interact socially. <u>Id.</u> at 196.

On April 20, 2007, Thomas Osika, Ph.D, ("Dr. Osika") conducted a consultative psychiatric examination of Wood. <u>Id.</u> at 207-09. Wood told Dr. Osika that he had begun taking medication for his depression fifteen years earlier, but that he had never been to counseling. <u>Id.</u> at 208. Wood denied having any suicidal thoughts, problems with concentration, or alcohol or substance abuse problems. <u>Id.</u> at 208-09. Dr. Osika described Wood as being friendly, cooperative, and alert, stated that Wood's speech was "coherent and logical," and noted that Wood appeared to have good insight and judgment. <u>Id.</u> at 208-09. Dr. Osika also stated that Wood did not demonstrate having any delusions, hallucinations, obsessions, compulsions, or phobias. <u>Id.</u> at 209. Wood recalled three out of three objects after immediate delay and two out of three after extended delay, and also remembered a string of six digits. <u>Id.</u> Wood did well on a simple math test, and Dr. Osika noted that Wood's general knowledge and vocabulary were intact. <u>Id.</u> Dr. Osika diagnosed Wood with "adjustment disorder, depressed mood," characterizing the severity of Wood's psychological stressors as "mild." <u>Id.</u> Dr. Osika concluded that Wood appeared capable of understanding and completing simple and complex directions, that Wood's ability to interact with coworkers and employers was unimpaired, and that from an emotional standpoint, Wood appeared able to work. <u>Id.</u>

10

On May 11, 2007, the Social Security Administration conducted a Psychiatric Review, synthesizing all of the medical evidence of Wood's mental impairment.  <u>Id.</u> at 213-26.  The examiner listed Wood as having an adjustment disorder with depressed mood, a medically determinable impairment.  <u>Id.</u> at 216. The examiner concluded, however, that this mental impairment did not restrict Wood's activities of daily living or ability to function socially.  <u>Id.</u> at 223.  The examiner also concluded that Wood's mental impairment posed a mild limitation to his ability to maintain concentration, persistence, or pace, and that Wood had never experienced episodes of "deterioration" for an extended duration.  <u>Id.</u>

### 3. Testimony

#### a. Wood's Testimony

Wood testified at the two administrative hearings regarding his professional experiences, physical and mental health problems, and his daily activities of living.  <u>Id.</u> at 27-50, 286-312.  Wood explained that as a seasonal worker for the Town of Horicon, he spent the summers digging graves and maintaining the landscaping at a cemetery, and during winters he operated a hydraulic wing on the side of a snow plow.  <u>Id.</u> at 34-40, 293-94. Wood testified that the pain in his feet, which began around 2005, forced him to dig the graves with a "backhoe machine" rather than by hand with a shovel as he had always previously

11

done.  See id. at 35-36, 304.  Operating the snow plow required
Wood to climb on and off the side of the truck to shovel snow,
sand, and salt.  Id. at 38-39.  Neither of Wood's jobs required
him to complete any paperwork or employ reading or writing
skills.  See id. at 305.

Wood testified that "throbbing" pain surrounded the sides,
tops, and bottoms of his feet, and that, on some days, "sharp
stabbing pains" shot up towards his knees.  Id. at 294-95.  Wood
stated that it was hard to stand on his feet, and doing so for
"any length of time" put him in "a lot of pain."  Id. at 294.
Wood also testified that he had pain in his feet even when
sitting.  Id. at 307.  When asked by the hearing officer what he
had done to treat the pain, Wood explained that he had tried
different prescribed medications, that he took Tylenol without
relief, and that he believed he now had no choice but to "live
with it."  Id. at 294-95.  Wood told the hearing officer what
prescribed medications that he was taking at that time, spelling
the names of each medication aloud.  Id. at 296.  Wood also
explained that, unless he is walking only a short distance, he
uses his cane to walk because "once in a while," one of his legs
will "give out on [him]."  Id. at 297-98.  Wood stated that he
could stand or walk for about five to ten minutes before needing
to sit and rest.  Id.  Wood also stated that the pain in his feet
and legs are the reason he is unable to work.  See id. at 295.

Wood testified that he tries to help out with household chores, but that his participation is limited to making simple meals for himself, putting a prepared dinner in the oven, and sometimes doing laundry or cleaning dishes. Id. at 298-99. Wood stated that he does not dust, sweep, mop, vacuum, take out the trash, make the beds, clean the bathroom, do yard work, or shovel snow. Id. at 299-300. Wood testified that he used to enjoy gardening, fishing, and hunting, but had been forced to give up those activities since the condition with his feet worsened. Id. at 309. Wood testified that he avoids driving unless it is necessary, and that when he does drive, he uses cruise control to minimize the pain in his feet. Id. at 300, 305. Wood also testified that he attends church regularly and goes to his daughter's field hockey games when he can. Id. at 301-02. Wood stated that although he enjoys reading magazines, newspapers, and "westerns," he does not read often because of his poor reading skills and instead will just look at the pictures in magazines. See id. at 308.

Prompted by his attorney to explain his history of mental illness, Wood stated that he was diagnosed with depression twenty years earlier. Id. at 306. Wood testified that although he sometimes has "bad days," his depression is largely controlled by his medication. Id. Wood explained that he has "flare-ups" with his depression three or four times a year, after which it takes

him "a couple of days to start feeling right" again.  <u>Id.</u> 306-07.

The hearing officer asked Wood whether he had considered seeking employment that did not require him to be on his feet and Wood responded that he had, but he did not know what other work he could do considering his limited education and training.  <u>Id.</u> at 304.  Wood stated that, due to the pain in his feet, "I can't do nothing anymore, not like I used to."  <u>Id.</u> at 309.

### b.  Vocational Expert's Testimony

After reviewing the vocational evidence relating to Wood, Andrews testified at the supplemental hearing on June 5, 2009. <u>Id.</u> at 33.  Andrews began by classifying Wood's prior positions for the Town of Horicon according to the Dictionary of Occupational Titles ("DOT").[9]  <u>Id.</u>  First, Andrews testified that Wood's work maintaining the cemetery was a combination between the position of "cemetery worker," DOT code 406.684-010, which is a skilled position with a heavy exertion level, and the position of "commercial groundskeeper," DOT code 406.684-014, a semi-skilled position with medium exertion.  <u>Id.</u> at 37.  Andrews classified the work Wood did during winters as being that of a "truck driver helper," DOT code 905.687-010, which is an unskilled position with heavy exertion.  <u>Id.</u> at 40.  Andrews noted, however, that it appeared Wood had performed the work of a

---

[9] Andrews expressly agreed to notify the hearing officer of any discrepancy between her expert opinion and information provided in the DOT.  <u>Id.</u> at 36.

truck-driver helper at a medium level of exertion.  <u>Id.</u> at 40-41.

The hearing officer then asked Andrews whether a person
could perform Wood's prior work, or that of any other occupation,
if the person could: occasionally lift, carry, push and pull ten
pounds; frequently lift, carry, push and pull less than ten
pounds; sit without limitations; occasionally stoop but never
balance, climb, crawl, crouch, or kneel; stand and walk for about
one hour in a work day with normal breaks, standing limited to
five to ten minutes at a time, and walking limited to short
distances lasting a few minutes at a time.  <u>Id.</u> at 41.  Andrews
responded that such a person could not perform any of Wood's
prior work.  <u>Id.</u> at 41-42.  Andrews also responded, however, that
such a person could perform the work of three positions that
require only unskilled, sedentary work: "order clerk," DOT code
209.567-014, of which there were 174,000 positions nationally and
478 regionally; "preparer," DOT code 700.687-062, of which there
were 105,000 positions nationally and 660 regionally; and "brake
linings coater," DOT code 574.685-010, of which there were
990,000 positions nationally and 375 regionally.  <u>Id.</u> at 42-43.
The hearing officer followed up by asking whether the
hypothetical employee could still perform these jobs if he needed
a cane for walking and a break every thirty to forty-five minutes
to stand and walk around, to which Andrews responded
affirmatively.  <u>Id.</u> at 42-43.  Finally, Andrews elaborated on the

15

responsibilities of an order clerk, explaining that such a worker typically uses a "computer device" to take food and beverage orders over a telephone or intercom system.  Id. at 44.

## II.  LEGAL STANDARD

### A.    Standard of Review

The Court reviews the Commissioner's decision to determine whether it is based on the correct legal standards and is supported by substantial evidence.  42 U.S.C. § 405(g); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).  The Supreme Court has defined "substantial evidence" as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)).  A reviewing court must "consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).

Legal decisions are reviewed de novo and the Court may not affirm a denial of benefits "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards, even if the ultimate decision may be arguably

16

supported by substantial evidence." Martone v. Apfel, 70 F.
Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing Johnson v.
Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  In light of the non-
adversarial nature of a disability benefits hearing, the hearing
officer has an affirmative duty to develop the record, regardless
of whether the claimant is represented by counsel.  Pratts v.
Chater, 94 F.3d 34, 37 (2d Cir. 1996); see also Hilsdorf v.
Commissioner Soc. Sec., 724 F. Supp. 2d 330, 344 (E.D.N.Y. 2010)
(citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998))
("[T]he ALJ has an affirmative obligation to seek out . . .
missing information.").  Remand is appropriate where the
administrative record contains gaps and further findings would
"plainly help to assure the proper disposition of the
[disability] claim."  Butts v. Barnhart, 388 F.3d 377, 385 (2d
Cir. 2004) (quoting Rosa, 168 F.3d at 83).  The Court should only
reverse the Commissioner's decision and remand for a calculation
of benefits when the record is "sufficiently complete" to provide
"persuasive evidence of total disability" such that further
proceedings would be pointless.  Manago v. Barnhart, 321 F. Supp.
2d 559, 568 (E.D.N.Y. 2004) (quoting Williams v. Apfel, 204 F.3d
48, 50 (2d Cir. 1999)) (internal quotation marks omitted).

## B.   Social Security Disability Standard

The Social Security Administration has promulgated a five-
step procedure for determining whether a social security claimant

is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520. The hearing officer must determine: 1) whether the claimant is engaged in substantial gainful activity; 2) whether the claimant has a severe impairment; 3) whether the impairment meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1") and meets the duration requirement such that the claimant is per se disabled; 4) whether the claimant has the residual functional capacity to perform his past work; and 5) whether the claimant has the residual functional capacity to do any other work, in light of the claimant's age, education, and work experience. Id.

The claimant bears the burden of proving the disability requirements of the first four steps, and the Commissioner bears the burden at the fifth step of proving that the claimant is capable of performing "substantial gainful work," alternative to the claimant's prior work, that exists in the national economy. Rosa, 168 F.3d at 77.

**III. HEARING OFFICER'S DECISION**

Conducting the five-step, disability-evaluation procedure, the hearing officer first determined that Wood had not engaged in substantial gainful activity since October 25, 2006, the onset date of Wood's alleged disability. Admin. R. at 16. The hearing officer then concluded that Wood had severe physical impairments including diabetes, obesity, hypertension, hyperlipidemia, "a

history of a chest wall bruise," and "a history of left upper extremity epicondylitis." Id. The hearing officer also concluded, however, that Wood did not have a severe mental impairment. Id. At the third step, the hearing officer found that none of Wood's impairments matched an impairment listed in Appendix 1, and that Wood was therefore not per se disabled. Id. at 17.

The hearing officer then determined that, although Wood may need a cane to walk, Wood had a residual functional capacity to: occasionally lift ten pounds; frequently lift less than 10 pounds; stand and walk for about one hour in a work day with normal breaks, standing limited to about five to ten minutes at a time, and walking limited to short distances lasting a few minutes at a time; sit without limitation; occasionally stoop; and never balance, climb, crawl, crouch or kneel. Id. at 17-18. Based on Wood's residual functional capacity, the hearing officer decided that Wood was unable to perform any of his past relevant work. Id. at 21. At the fifth and final step, the hearing officer determined that, in light of Wood's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that Wood could perform. Id. Accordingly, the hearing officer concluded that Wood was not disabled from October 25, 2006 to July 6, 2009, the date of the decision. Id. at 22.

19

## IV. ANALYSIS

Wood asserts generally that the hearing officer's decision is not supported by substantial evidence and is "incorrect as a matter of law." Pl.'s Br. 17. The hearing officer found in Wood's favor at steps one, two, and four, concluding that Wood was not engaged in substantial gainful activity, suffered from severe physical impairments, and was not capable of performing his past work, respectively. Admin. R. at 16, 21. The Court therefore focuses its review on the findings adverse to Wood at steps two, three, and five, respectively: that Wood did not suffer from a severe mental impairment; that none of Wood's impairments, individually or in combination, met or medically equaled one of the listed impairments in Appendix 1; and that Wood was capable of performing jobs that exist in the national economy.

### A. Substantial Evidence Supports the Hearing Officer's Determination that Wood's Mental Impairment Was Not Severe

In addition to the five-step disability-evaluation procedure, Social Security regulations require hearing officers to engage in an additional, two-step "special technique" to evaluate the severity of a claimant's mental impairments. 20 C.F.R. § 404.1520a. First, the hearing officer must determine whether the claimant has a medically determinable mental impairment. Id. at § 404.1520a(b)(1). If the hearing officer

identifies such a mental impairment, the hearing officer must
then "rate the degree of functional limitation resulting from the
impairment(s)" according to four broad functional areas: (1)
activities of daily living; (2) social functioning; (3)
concentration, persistence, or pace; and (4) episodes of
decompensation.  Id. at § 404.1520a(c)(3); see also Kohler v.
Astrue, 546 F.3d 260, 265-66 (2d Cir. 2008).  If the hearing
officer rates the degree of limitation in each of the first three
areas as "mild" or better, and the hearing officer is unable to
identify any episodes of decompensation, then the hearing officer
generally should conclude that the claimant's mental impairment
is not severe.  20 C.F.R. § 404.1520a(d)(1).

    The hearing officer in this case assessed Wood's mental
impairment according to the "special technique" promulgated in 20
C.F.R. § 404.1520a.  Admin. R. at 16-17.  First, the hearing
officer identified Wood's only alleged mental impairment,
adjustment disorder with depressed mood, as a medically
determinable impairment.  Id. at 16.  The hearing officer then
found that Wood's depression caused a mild limitation to Wood's
activities of daily living, and did not limit Wood's social
functioning or concentration, persistence, or pace.  Id. at 16-
17.  Finally, the hearing officer found that Wood had
"experienced no episodes of decompensation which have been of
extended duration."  Id. at 17  Having found the degree of

limitation in the first three functional areas all mild or
better, and no episodes of decompensation, the hearing officer
concluded that Wood's impairment was not severe pursuant to 20
C.F.R. § 404.1520a(d)(1).  Id.

The hearing officer correctly applied the "special
technique" required by the regulations, and substantial evidence
supports the determination that Wood's adjustment disorder with
depressed mood was not severe.  The hearing officer's assessment
of Wood's mental impairment was consistent with those of treating
physician Dr. Rugge and consulting physician Dr. Osika, as well
as Wood's testimony.  See id. at 16-17.

As for the first broad functional area, activities of daily
living, Dr. Rugge did not document any way in which Wood's
depression interfered with his ability to perform activities of
daily living.  Id. at 193-94.  Dr. Osika stated that Wood
"help[ed] out with all the household chores."  Id. at 209.  Wood
testified that his depression was exacerbated only three or four
times per year, for two to three days at a time.  Id. at 306-07.
The record demonstrates that Wood's activities of daily living
were significantly limited by his physical impairments, but Wood
never alleged that his depression interfered with specific daily
activities.  The record therefore provides substantial support
for the hearing officer's determination that Wood's limitation in
activities of daily living due to his depression was mild.  See

<u>Petrie</u> v. <u>Astrue</u>, 412 F. App'x 401, 409 (2d Cir. 2011) (affirming hearing officer's finding of mild limitation of activities of daily living where claimant was able to dress, bathe, cook, do laundry, and prepare food).

The record also supports the hearing officer's conclusion that Wood's depression did not limit his social functioning or concentration, persistence, or pace. <u>See</u> Admin. R. at 16-17. Wood's allegations of having trouble following spoken and written instructions and forgetting "things all the time," <u>id.</u> at 139-40, are contradicted by the evidence in the record. Dr. Rugge stated that Wood had no limitation with respect to understanding, memory, concentration and persistence, and social interaction. <u>Id.</u> at 19-20. Additionally, Dr. Rugge did not list Wood as having any limitations with respect to his "sensorium and intellectual functions," including attention, concentration, orientation, memory, information, ability to perform calculations, insight, and judgment. <u>Id.</u> at 194. Dr. Osika echoed Dr. Rugge's findings, stating he believed Wood was capable of understanding and completing simple and complex directions and interacting fully with coworkers and employers. <u>Id.</u> at 209. Moreover, Wood performed well on the memory tests administered by Dr. Osika. <u>See</u> <u>id.</u> Wood argues that the hearing officer failed to properly account for Wood's limited reading abilities. <u>See</u> Pl.'s Br. 5, 11-12. Having limited reading ability is not

itself, however, a medically determinable impairment, and there is no evidence in the record that Wood's limited reading ability was caused by his depression. The hearing officer therefore properly determined that Wood's depression did not limit his social functioning or concentration, persistence, or pace. See id. at 17.

The Social Security regulations define an episode of "decompensation" as an "exacerbation[] or temporary increase[] in symptoms or signs accompanied by a loss of adaptive functioning." 20 C.F.R. Pt. § 404.1520a app. at § 12.00C(4). "The term repeated episodes of decompensation, each of extended duration," as evaluated for the fourth functional area of the "special technique," means three episodes of decompensation within one year, "each lasting for at least [two] weeks." Id. The hearing officer correctly determined Wood's alleged "flare-ups" in his depression did not constitute "repeated episodes of decompensation, each of extended duration" within the meaning of the regulations, as Wood testified that his exacerbated symptoms during those periods lasted only a few days. Id. at 17, 306-07. The Court therefore affirms the hearing officer's finding that Wood's mental impairment was not severe.

**B.    The Hearing Officer Failed to Support Adequately His Finding that Wood's Impairments Did Not Meet, or Medically Equal, an Impairment Listed in Appendix 1**

If a hearing officer finds that a claimant has a severe

mental or physical impairment at step two of the disability-
evaluation procedure, the hearing officer must then determine
whether the impairment meets the criteria of any impairment
listed in Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii), (d).  The
impairments listed in Appendix 1 are considered severe enough to
prevent an individual from doing any gainful activity.  <u>Id.</u> at
§ 404.1525(a).  If a claimant's impairment, or combination of
impairments, matches one listed in Appendix 1, and satisfies the
duration requirement in 20 C.F.R. 404.1509, then the hearing
officer should generally find the claimant disabled without
considering the claimant's age, education, and work experience.
<u>Id.</u> at § 404.1520(d).

     To match an impairment listed in Appendix 1, a claimant's
impairment "must meet all of the specified medical criteria" of a
listing.  <u>Sullivan</u> v. <u>Zebley</u>, 493 U.S. 521, 530 (1990) (citing 20
C.F.R. § 404 Subpt. P, App. 1).  "An impairment that manifests
only some of those criteria, no matter how severely, does not
qualify."  <u>Id.</u>  An impairment may also be "medically equivalent"
to a listed impairment if it is "at least equal in severity and
duration to the criteria of any listed impairment."  20 C.F.R.
§ 404.1526(a).  Although a hearing officer may award benefits at
step three, a claimant who fails to prove their impairment
matches or equals one listed in Appendix 1 is not denied
benefits, but rather, the hearing officer must proceed to step

four.  See id. at § 404.1520(e).

     In the instant case, the hearing officer determined at step

three that Wood did "not have an impairment or combination of

impairments that [met] or medically equal[ed] one of the listed

impairments."  Admin. R. at 17.  In support of his finding, the

hearing officer provided two sentences:

> The medical evidence does not document listing-level
> severity, and no acceptable medical source has mentioned
> findings equivalent in severity to the criteria of any
> listed impairment, individually or in combination.  The
> medical evidence does not document that the claimant has
> not [sic] lost gait and station, or his gross or fine
> motor functioning.

Id.  Based on this scant explanation, the Court cannot determine

whether the hearing officer applied the correct legal standards

and whether the hearing officer's conclusion is supported by

substantial evidence.  Therefore, the Court remands the matter

for further development of the record.

     When assessing a disability claim, a hearing officer is not

required to "reconcile every conflicting shred of medical

testimony."  Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981)

(holding hearing officer's explanation that he "considered" the

exhibits presented in evidence was sufficient); accord Monguer v.

Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) (stating a hearing

officer need not specifically reference "every item of testimony

presented to him or . . . explain[] why he considered particular

evidence unpersuasive or insufficient to lead him to a conclusion

of disability"). Where there is either no evidence or substantial conflicting evidence in the record, however, the hearing officer must set forth "the crucial factors" of his or her decision "with sufficient specificity to enable [reviewing courts] to decide whether the determination is supported by substantial evidence." <u>Ferraris</u> v. <u>Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984) (citing <u>Treadwell</u> v. <u>Schweiker</u>, 698 F.2d 137, 142 (2d Cir. 1983) ("[T]he propriety of agency action must be evaluated on the basis of stated reasons.")) (remanding where hearing officer concluded SSDI claimant could do sedentary work without explicitly determining claimant's physical capacity for sitting); <u>see</u> <u>McCallum</u> v. <u>Commissioner of Soc. Sec.</u>, 104 F.3d 353, *1 (2d Cir. 1996) (stating hearing officer "must make specific factual findings in order to facilitate meaningful judicial review"); <u>cf.</u> <u>Berry</u> v. <u>Schweiker</u>, 675 F.2d 464, 468 (2d Cir. 1982) (affirming denial in spite of hearing officer's failure to specify rationale because decision was supported by substantial evidence).

It is particularly critical for a hearing officer to articulate the specific basis for his or her rejection of a disability claim when a claimant has arguably demonstrated that his symptoms match an impairment listed in Appendix 1. <u>See</u> <u>Aponte</u> v. <u>Secretary, Dep't of Health and Human Servs.</u>, 728 F.2d 588, 592-93 (2d Cir. 1984) (remanding where evidence suggested

SSDI claimant's impairment matched a listed impairment and the court "[could] not determine the ALJ's basis for his rejection"); Berry, 675 F.2d at 469 ("[I]n future cases in which the disability claim is premised upon one or more listed impairments of Appendix 1, the [hearing officer] should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment."); Lazo-Espinoza v. Astrue, No. 10-CV-2089 (DLI), 2012 WL 1031417, at *9 (E.D.N.Y. Mar. 27, 2012) (remanding based on hearing officer's failure to provide rationale for finding SSDI and SSI claimant's impairments did not match a listed impairment); cf. Ramos v. Barnhart, No. 02Civ.3127(LAP)(GWG), 2003 WL 21032012, at *9-*11 (S.D.N.Y. May 6, 2003) (remanding due to hearing officer's failure to explain the applicability of a listed impairment crucial to the child claimant's SSI claim). Remand is appropriate where a hearing officer fails sufficiently to articulate the basis for his denial of disability benefits such that the reviewing court "cannot determine whether the [hearing officer's] conclusion was based on a correct application of the law and whether there is substantial evidence in the record to support it." Aponte, 728 F.2d at 593; accord Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Because of the lack of specificity of [the hearing officer's] decision and the inconclusiveness of the record, it is appropriate to remand the case . . . to ensure that the correct

legal principles are applied . . . ."); see Polidoro v. Apfel,
No. 98 CIV.2071(RPP), 1999 WL 203350, at *7 (S.D.N.Y. Apr. 12,
1999) ("The ALJ's failure to . . . set forth the reasons for his
conclusions with sufficient specificity hinders the ability of a
reviewing court to decide whether his determination is supported
by substantial evidence.").

In this case, the hearing officer's otherwise thorough
decision failed to set forth sufficient factual or legal support
for his finding that none of Wood's impairments matched or
medically equaled an impairment listed in Appendix 1.  See Admin.
R. at 17.  The hearing officer did not identify which, if any, of
the listed impairments he considered when evaluating Wood's
impairments or explain why Wood's impairments fell short of the
criteria for a specific listed impairment.  See id.  The hearing
officer only mentioned Wood's symptoms once, and his assertion
that Wood "ha[d] not lost gait and station, or his gross or fine
motor functioning," was not supported by any reference to or
discussion of the record.  Id.

If substantial evidence supported the hearing officer's
conclusory finding, the Court could nevertheless overlook the
decision's shortcomings and affirm the finding.  See Berry, 675
F.2d at 468 (affirming hearing officer's step three determination
despite "absence of an express rationale" because finding was
supported by substantial evidence).  But that is not the case.

Rather, evidence in the record suggests that Wood's physical
impairments may match or medically equal at least one listed
impairment, "Diabetes Mellitus," which is found in section 9.08
of Appendix 1.[10]  Disability under section 9.08 requires:

> A. Neuropathy demonstrated by significant and persistent
> disorganization of motor function in two extremities
> resulting in sustained disturbance of gross and dexterous
> movements, or gait and station (see 11.00C); or
> B. Acidosis occurring at least on the average of once
> every [two] months documented by appropriate blood
> chemical tests (pH or $PCO_2$ or bicarbonate levels); or
> C. Retinitis proliferans.

20 C.F.R. pt. 404, subpt. P, app. 1, § 9.08; see also Farnham v.

---

[10] The Court notes that since Wood applied for disability
benefits, the Social Security Administration adopted regulations
revising Appendix 1 and eliminating diabetes mellitus as a listed
impairment.  See Revised Medical Criteria for Evaluating
Endocrine Disorders, 76 Fed. Reg. 19692-01, at 8 (Apr. 8, 2011)
(removing sections 9.01-9.08 of Part A) [herinafter App'x 1
Revisions]; see also Lane v. Astrue, No. 1:10-CV-28 JD, 2011 WL
3348095, at *8 n.7 (N.D. Ind. Aug. 3, 2011) (noting amendment to
Appendix 1).  The new regulations became effective on June 7,
2011.  App'x 1 Revisions, supra, at 1.  The only remaining listed
impairment that is based on diabetes alone applies only to
children under the age of six.  See 20 C.F.R. Pt. 404, Subpt. P,
App. 1, § 109.08.  Under the new regulations, diabetes mellitus
is still considered a medically determinable impairment, but its
effects are considered under other listings in Appendix 1.  App'x
1 Revisions, supra, at 2.  When an adult with diabetes mellitus
does not satisfy any other listing, the effects of the diabetes
mellitus are accounted for in the claimant's residual functional
capacity calculation.  Id.
     For the purposes of the Court's review, however, the Court
applies the regulations that were in effect at the time Wood
applied for disability benefits.  Id. at 2 n.3 ("We expect that
Federal courts will review our final decisions using the rules
that were in effect at the time we issued the decisions. If a
court reverses our final decision and remands a case for further
administrative proceedings after the effective date of these
final rules, we will apply these final rules to the entire period
at issue in the decision we make after the court's remand.").

<u>Astrue</u>, 832 F. Supp. 2d 243, 263 (W.D.N.Y. 2011) (setting forth criteria for "Diabetes Mellitus" in Appendix 1). Section 11.00C lists as criteria for "Neurological" impairments:

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00C; <u>see also</u>, <u>Lazo-Espinoza</u>, 2012 WL 1031417, at *9 (providing requirements under § 11.00C).

Evidence in the record suggests that Wood may have been per se disabled under the standards of section 9.08. The hearing officer's own findings — that Wood's impairment of diabetes was severe and that his allegations of being unable to stand and walk for prolonged periods were credible — that suggest as much. <u>See</u> Admin. R. at 16, 19. There is ample evidence in the record documenting Wood's history of diabetes mellitus with sensory neuropathy in his legs and feet. <u>See</u> <u>supra</u> § I.B.1.a., 3.a. (surveying medical evidence and testimony regarding Wood's diabetes). On May 7, 2008, Dr. Rugge conducted a diabetic foot exam that showed Wood could only feel one of the ten points tested on his feet. Admin. R. at 253. Dr. Rugge noted that

Wood's feet had a "deformed shape," id., and stated that the pain caused by the sensory neuropathy interfered with his ability to function in a work setting, id. at 194, and limited his ability to stand and walk. Id. at 195. The hearing officer fully credited Dr. Rugge's assessment, but noted that it "may overstate the claimant's current abilities to the extent that it would permit standing or walking for more than brief periods of time." Id. at 20 (emphasis added). Moreover, Dr. Stein, a consulting physician, conducted a neurological assessment of Wood and found that Wood's sensory neuropathy had caused him to have "decreased sensation on the plantar surface of the left foot including vibratory sense." Id. at 211.

Evidence of such "sensory disturbances" caused by diabetes mellitus arguably indicates "disorganization of motor function" consistent with the criteria of section 9.08 and section 11.00C. See Lazo-Espinoza, 2012 WL 1031417, at *9 (remanding for evaluation of impairment under section 9.08 where "decreased pinprick sensation on bilateral feet," and "numbness, weakness and bilateral leg pain," limited claimant's ability to walk); cf. Farnham, 832 F. Supp. 2d at 262-63 (affirming finding that claimant's diabetes did not meet section 9.08 where claimant had "nearly normal neurologic examination"); Brayton v. Astrue, 1:08-CV-236 (GLS/VEB), 2009 WL 2971514, at *4-5 (N.D.N.Y. Sept. 11, 2009) (Sharpe, J.) (affirming finding that claimant's diabetes

was not medically equivalent to section 9.08 where claimant's diabetes affected her "ability to walk for periods of time, long periods of time," and she "sometimes experience[d] numbness" in feet). Wood's sensory neuropathy unquestionably interfered with his locomotion to some degree, as Wood was prescribed a cane for walking, Admin R. at 297, and the hearing officer concluded that Wood's ability to walk was limited to "short distances lasting a few minutes at a time." Id. at 18; see also Lazo-Espinoza, 2012 WL 1031417, at *10 (concluding claimant had "at least arguably demonstrated that his symptoms met the criteria for Diabetes Mellitus" where evidence indicated claimant could not walk more than one to ten city blocks).

The present record, however, does not conclusively establish that Wood's impairment met or medically equaled the criteria of section 9.08 such that "further evidentiary proceedings would serve no purpose." Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). Wood testified that his activities of daily living included making simple meals for himself and sometimes doing basic household chores. Admin. R. at 298-99. In his consultative examination, Dr. Stein found that Wood's "[m]otor strength [was] bilaterally symmetrical" and that his "[d]eep tendon reflexes [were] 2+ bilaterally symetrical." Id. at 211. Critically, there is a dearth of medical evidence that assesses Wood's physical impairments in terms of section 9.08's criteria.

In a consultative examination, the Social Security Administration's disability examiner stated that Wood had an "effective gait as well as full motor strength," but did so while expressly rejecting Dr. Rugge's assessment of Wood's physical abilities. Id. at 235. Dr. Stein characterized Wood's gait as "slow." Id. at 211. Dr. Rugge, Wood's treating physician, never expressly assessed Wood's "gait and station" or "motor function," although he did reference Wood's "mechanics" as a factor contributing to the pain in his feet and legs.

The Court cannot discern whether the hearing officer's decision was based on the correct application of legal principles or is supported by substantial evidence and therefore remands the matter for further development of the record. See Parker, 626 F.2d at 235 (holding reviewing courts ought not affirm a hearing officer's decision where there are "gaps in the administrative record" or a reasonable basis for doubting that the correct legal principles were applied). On remand, the hearing officer should evaluate whether Wood's physical impairments, as evidenced in the record, match or medically equal the criteria shown for Diabetes Mellitus in section 9.08 of Appendix 1, as well as the criteria of any other applicable listed impairment that the record reasonably suggests Wood's impairment may match, and should sufficiently explain his findings.

**C. Substantial Evidence Supports the Hearing Officer's Determination of Wood's Residual Functional Capacity**

Prior to steps four and five of the disability-evaluation procedure, the hearing officer must determine the claimant's residual functional capacity based on all of the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(a)(4), (e), 404.1545. The hearing officer must set forth his determination of a claimant's residual functional capacity with sufficient specificity for the Court to determine whether it is supported by substantial evidence, no differently from at step three or any other. <u>Ferraris</u>, 728 F.2d at 587 (remanding where hearing officer's conclusory residual functional capacity finding left court unable to determine whether finding was supported by substantial evidence); <u>see</u> <u>supra</u> Section IV.B.

In assessing a claimant's residual functional capacity, the hearing officer must consider the claimant's reports of pain and other limitations, 20 C.F.R. § 404.1529, but is "not required to accept the claimant's subjective complaints without question." <u>Genier</u> v. <u>Astrue</u>, 606 F.3d 46, 49 (2d Cir. 2010) (citing <u>Marcus</u> v. <u>Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979)). Rather, the hearing officer "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." <u>Id.</u> The regulations provide a two-step procedure for assessing subjective claims of pain. 20 C.F.R. § 404.1529. First, the hearing officer must "decide whether the claimant suffers from a medically determinable impairment that

35

could reasonably be expected to produce the symptoms alleged. Genier, 606 F.3d at 49 (citing Section 404.1529(b)). If the claimant suffers from such an impairment, the hearing officer is then required to determine "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." Id. (alteration in original) (quoting § 404.1529(a)) (internal quotation marks omitted); see also Williams ex rel. Williams, 859 F.2d at 261 (stating credibility determination must be "consistent with the medical and other evidence").

In this case, the hearing officer found that Wood had the residual functional capacity to: occasionally lift ten pounds; frequently lift less than 10 pounds; stand and walk for about one hour in a work day with normal breaks, standing limited to about five to ten minutes at a time, and walking limited to short distances lasting a few minutes at a time; sit without limitation; occasionally stoop; and never balance, climb, crawl, crouch or kneel. Admin. R. at 17-18. In making that determination, the hearing officer accounted for the fact that Wood sometimes needed a cane to walk. Id. Additionally, the hearing officer gave "great" weight to the opinion of Dr. Rugge, some weight to that of Dr. Stein, and did not mention the findings of the Social Security Administration examiner, whose opinion was the least favorable toward Wood. See id. at 18-21.

The hearing officer found credible Wood's "allegations of his inability to stand or walk for prolonged periods," and factored them into the calculation of Wood's residual functional capacity. Id. at 19. With respect to Wood's allegation that he was unable to sit for prolonged periods, however, the hearing officer found that although Wood's physical impairments could reasonably be expected to cause the alleged symptoms, Wood's testimony was "unpersuasive" and unsupported by the record. Id. at 20. Therefore, the hearing officer did not credit the allegation in calculating Wood's residual functional capacity. Id.

Substantial evidence in the record supports the hearing officer's determination of Wood's residual functional capacity, as the hearing officer correctly noted that it was consistent with the opinions of Dr. Rugge and Dr. Stein. See id. at 20-21. In fact, the hearing officer determined that Wood had slightly less functional capacity than did any treating or examining doctor. Compare id. at 17-18, with id. at 195, and id. at 211. The hearing officer's finding regarding Wood's inability to stand and walk for prolonged periods was consistent with Wood's testimony and all medical evidence in the record save for the Social Security examiner's opinion, which contradicted that of Dr. Rugge. Compare id. at 18-19, with id. at 195, id. at 232, id. at 235, and id. at 297.

Substantial evidence also supported the hearing officer's

finding that Wood's allegations of his inability to sit for prolonged periods were not credible.  See id. at 20-21.  Most notably, Wood's allegations contradict Dr. Rugge's assessment, in which he affirmatively stated that Wood was not limited in his ability to sit.  Id. at 195.  Additionally, Dr. Stein did not mention that Wood was limited in his ability to sit in anyway. See id. at 210-12.  Although Wood once mentioned to HHHN staff that he felt pain in his feet even when sitting, id. at 179, the record is devoid of any other medical evidence supporting Wood's allegation.  Therefore, the Court affirms the hearing officer's credibility determination and finding of Wood's residual functional capacity.

### D. Substantial Evidence Supports the Hearing Officer's Determination that Jobs Exist in the National Economy that Wood Can Perform

At the fifth step of the disability-evaluation procedure, the Commissioner bears the burden of proving that the claimant is capable of performing substantial gainful work as an alternative to his past work.  Berry, 675 F.2d at 467; see also 20 C.F.R. § 404.1520(g).  Ordinarily, the hearing officer may resort to the applicable Medical Vocational Guidelines ("the Grids"), 20 C.F.R., Part 404, Subpart P, Appendix 2, to determine the claimant's capacity for other work.  Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).  Where a claimant cannot perform a full range of sedentary work, however, the claimant must be evaluated on an

individual basis, which requires "calling a vocational expert to testify as to the [claimant's] ability to perform some particular job." <u>Ball</u> v. <u>Astrue</u>, 755 F. Supp. 2d 452, 465 (W.D.N.Y. 2010) (quoting <u>Nelson</u> v. <u>Bowen</u>, 882 F.2d 45, 49 (2d Cir. 1989)) (internal quotation marks omitted); <u>see, e.g.</u>, <u>Bapp</u>, 802 F.2d at 605-06 ("[I]n a case where both exertional and nonexertional limitations are present, the guidelines cannot provide the exclusive framework for making a disability determination."); <u>Aregano</u> v. <u>Astrue</u>, 882 F. Supp. 2d 306, 320-22 (N.D.N.Y. 2012) (remanding for hearing officer's failure to consult vocational expert).

The hearing officer is required to "use the same residual functional capacity assessment used to determine if a claimant can perform past relevant work when assessing a claimant's ability to perform other work." <u>Ball</u>, 755 F. Supp. 2d at 466 (citing 20 C.F.R. § 404.1550(c)(2)). Additionally, the hypothetical questions posed by the hearing officer to a vocational expert must "set out all of the claimant's impairments." <u>Id.</u> (citing <u>Lewis</u> v. <u>Apfel</u>, 236 F.3d 503, 517 (9th Cir. 2001)) (internal quotation marks omitted).

Substantial evidence supports the hearing officer's finding that jobs exist in significant numbers in the national economy that Wood can perform. <u>See</u> Admin. R. at 21-22; <u>Lee</u> v. <u>Astrue</u>, No. 10-CV-6063 CJS, 2011 WL 1675101, at *8 (W.D.N.Y. May 4, 2011)

(reversing due to hearing officer ignoring vocational expert's
testimony); Ball, 755 F. Supp. 2d at 466 (same).  Wood asserts
that he is incapable of performing sedentary work or the jobs
identified by Andrews, but fails to identify what aspect of the
hearing officer's residual functional capacity determination was
incorrect or how the hearing officer's inquiry of Andrews was
deficient.  See Pl.'s Br. 14-17.  The hearing officer posed
hypothetical questions to Andrews that accurately reflected the
hearing officer's determination of Wood's residual functional
capacity and impairments.  See Admin. R. at 41-42.  Moreover, the
hearing officer ensured that Wood would be able to perform the
jobs cited by Andrews even if Wood required regular breaks to
stand and move around.  See id. at 42-43.  The hearing officer
also properly accounted for Wood's need for a cane.  Id. at 43.
The Court therefore affirms the hearing officer's finding that
Wood was capable of performing jobs that exist in the national
economy other than his past work.

### E.   The Hearing Officer Considered the Combined Effect of Wood's Impairments

Wood argues that the hearing officer failed to account for
all of Wood's impairments and their combined effect in making the
disability determination.  Pl.'s Br. 10-14, 18 (citing Dixon v.
Shalala, 54 F.3d 1019, 1031 (2d Cir. 1995)).  The regulations
require the hearing officer to "'consider the combined effect of
all of [the claimant's] impairments without regard to whether any

such impairment, if considered separately, would be of sufficient severity' to establish eligibility for Social Security benefits." Burgin v. Astrue, 348 Fed. App'x 646, 647 (2d Cir. 2009) (alterations in original) (quoting 20 C.F.R. § 404.1523). The Second Circuit has emphasized that "the combined effect of a claimant's impairments must be considered in determining disability; the [Commissioner] must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe." Dixon, 54 F.3d at 1031; see, e.g., Thompson v. Astrue, 416 Fed. App'x 96, 97 (2d Cir. 2011) (remanding due to hearing officer considering impairments separately); De Leon v. Secretary of Health and Human Servs., 734 F.2d 930, 937 (2d Cir. 1984) (reversing denial based on hearing officer's failure to analyze combined effect of claimant's four impairments).

The hearing officer properly considered the combined effect of all of Wood's impairments, including his non-severe impairments, at every step of the disability-evaluation procedure, notwithstanding the previously identified deficiencies with the hearing officer's decision at step three. See Admin. R. 16-22; see also supra Section IV.B. After determining that Wood's depression was not severe, Admin. R. at 16-17, the hearing officer addressed each of Wood's severe and non-severe physical and mental impairments in his explanation of his determination of

41

Wood's residual functional capacity. <u>See</u> <u>id.</u> at 18-19. The hearing officer also accounted for the combined effect of Wood's obesity. <u>Id.</u> at 19. As noted above, the hearing officer included all of Wood's impairments in the hypothetical question he posed to Andrews. <u>See</u> <u>id.</u> at 41-43; <u>supra</u> Section IV.D. Contrary to Wood's assertion, there is no evidence in the record demonstrating an impairment that the hearing officer failed to consider, or the contributory effects for which the hearing officer failed to account.

## V.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1.  The Commissioner's motion for judgment on the pleadings, ECF No. 16, is DENIED;

2.  The Commissioner's decision denying SSDI benefits is REVERSED;

3.  The hearing officer's findings with respect to steps one, two, four, and five of the disability-evaluation procedure are AFFIRMED; and

4.  The case is REMANDED for further findings with respect to step three, i.e., whether Wood's physical impairments match or medically equal the criteria of an impairment listed in Appendix 1.


**SO ORDERED.**

**Dated:** December 17, 2013


/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

42